That's 410407 for the appellate, Stephanie Scholes for the apolyte, Melissa McGrath, and Scholes. Good morning, morning, please support counsel. My name is Stephanie schools. I represent Mr. David Adamson. I'd like to also reserve 5 minutes for rebuttal. This is a case involving distribution of property. It is a question of an abuse of discretion in the lower courts. And the question of whether or not certain issues of personal property and the distribution of assets were properly distributed and the abuse of discretion took place. The proper standard of review with the abuse of discretion that we're asking that the court follow would be under the hacking case that was handed down by this court in 2009. And we're also indicating that that should be followed. Where there's a situation and our indication is that there's a situation where in view of all of the circumstances, the trial court fell to the second part of the standard. Wherein that the decision of the court and brought before the court that the court's decision in view of all of the circumstances and looking at all of those circumstances exceeded the bounds of reason. And ignored the recognized principles of law under Section 503 D of the Illinois Marriage and Dissolution of Marriage Act and the recognized case law resulting in a substantial injustice to Mr. Adams. The first main issue that we're asking the court to consider is the issue with regard to the deferred equalization payment with regard to the property known as the Johnson County property. There is a piece of property that was a recreational piece of property in Johnson County, Illinois that these two parties owned which was 187 acres in Johnson County, Illinois. According to the opinion handed down by the circuit court in McLean County, Illinois, the parties did agree that this piece of property was to be sold. And the disagreement between the parties was who was to have control of the sale of this property. The undisputed facts in the trial court were that Mr. Adamson used this piece of property as a recreational piece of property. Mr. Adamson would hunt on this property during the months of October to the month of April each year. It's undisputed that he is an avid deer hunter and that there are 187 acres where he would deer hunt. It's undisputed that there is a large pond that he took very good care of and that he and his sons would fish on this pond. It's also undisputed that he would mushroom hunt on this property. It's also undisputed by the testimony as presented in the facts in the brief by the appellant that Mr. Adamson was the main caretaker of this property. Both Terry Adamson and David Adamson... The property is supposed to be sold. What difference does it make to him how it's held? The difference, Your Honor, is the fact that when the property was to be sold, as was testified to and was put forth in the facts, Mr. Adamson had much better knowledge of the area in Johnson County. He had much better knowledge of the neighbors in Johnson County. He had much better contacts in Johnson County. Mr. Adamson also took the effort to get to know the lay of the land and also to get to know the national ability to sell this property, to get top dollar for this property because as was testified... Well, isn't he going to work hard to sell it the way the order is? He indicated that he did want to work hard to sell this piece of property the way that it was. What's his complaint? His complaint is, Your Honor, that... The main complaint and the reason that he's arguing that it is inequitable, Your Honor, is the fact that he was essentially locked off the property in order to basically be punished because his wife did not want him to be able to use this property while the property was being sold because she was afraid that he would, with absolutely no proof, that he would put the sale off. But there was no proof provided, no... The solution is to hurry up and sell it, isn't it? Correct. Why isn't that the solution for him? Why is he here in the appellate court? He's in the appellate court, Your Honor, due to the fact that pursuant to in re marriage of Weaver and pursuant to the rules set forth in the Weaver case, the trial court is not to... and as was set forth in the Weaver case, is not the job of the trial court to act as a court of equity. It is the job of the trial court to distribute the property in a fair manner. And what is clear from the record is what the trial court was attempting to do was use equity powers in order to make it fair to keep Mr. Adamson from basically putting off the sale of the property. Mr. Adamson's testimony was clear that both Mrs. Adamson's two market analysis, and according to one of her market analysis, it would take up to 18 to 24 months to sell the property. Mr. Adamson's research and his testimony both demonstrated that it would take 18 to 24 months to sell this property. Mr. Adamson indicated that he was going to do everything he could to get top dollar for this property because it's a unique property and he wanted to get top dollar for this property. Well his complaint is he doesn't get to use it for deer hunting while it's being sold. And how can anybody say that's an abuse of the court's discretion to enter the order he did? I'm amazed at that. It's not just that he can't use it for deer hunting, Your Honor. The other complaint, Your Honor, is the fact that the way the property was assigned is that Mr. Adamson was required to, and that is also reflected in my client's motion to reconsider. The property was assigned to my client for the spring months, and the property was assigned to Mrs. Adamson from the months of October to April, and it's clear that Mrs. Adamson's job runs because she has a part-time job that runs eight months through the year. Those eight months of the year are the winter months. The testimony also shows that Mrs. Adamson has not even been to the Johnson County property but maybe two to three times in the last three years. Mr. Adamson is the main person who keeps up this property. So Mrs. Adamson doesn't really even have access or know how to take care of this property. So even in the winter months, Mr. Adamson has to take care of the property. So are you arguing that the six months should have been flip-flop? Mr. Adamson's argument was that he should have been the carekeeper year-round while the property was up for sale. And if the trial court did that, what would be the inducement for him to accomplish it for sale? The inducement would be that it has to be sold. If it didn't get sold, the trial could have put different rules on Mr. Adamson. If it didn't sell within the 18 months to two years, then the parties could have been brought back into court on review with different ramifications. My client also offered, and it was part of the trial court record, that Mrs. Adamson would be kept abreast. She would have access to the sales. She would have access to the brokers. She would have access to every single point of the sale. My client was not going to have carte blanche on the sale, Your Honor. Well, how about if the trial court had said, You've got six months to sell the property on a 50-50 split. If it goes past six months for every month that it goes past six months, the split gets added a percentage point to her and a reduction of the percentage point to him. He likely would have still argued the inequity based on the fact that this is the largest asset the two parties have. But the point the trial court was trying to make is it needs to be sold sooner rather than later. Is that correct? The point the trial court was trying to make was the property needs to be sold. But the trial court was also trying to keep Mr. Adamson off the property based off of what appear to be empty threats by Mrs. Adamson. However, it also appears from the record that, and again, standing on what my client is also looking at the ruling out of the Weaver case, wherein you look at the court should not be using equitable powers, this has been a long, contentious dissolution proceeding where both parties exchanged many barbs throughout the dissolution proceeding. And there was a temporary relief order where the parties were actually, these parties have had to be instructed by each other when they had to use the washer and dryer, when they could use the fax machine. These two parties could not agree on anything. And therefore, what this ruling actually appears to be is a softball to Mrs. Adamson to, basically, you were denied your use of certain things during temporary relief, so this is what we will take away from Mr. Adamson during post-decree in order to equal things out. When Mr. Adamson made it very clear in his sworn testimony during the trial that he had absolutely no reason not to sell this property because there was no way he could pay an equalization payment. And Mr. Adamson had no liquid asset coming out of this dissolution whatsoever. As a matter of fact, every one of his assets was tied up and he had nowhere to live because this is not his primary residence. His business is in Central Illinois. Everything he has in Central Illinois is in Central Illinois. This was not going to be his primary residence. And when he did find a home, he was cross-examined on that and it was made to sound like the primary residence that he had found was also something to be impeached upon. So Mr. Adamson was wanting to sell Johnson County just as badly as Mrs. Adamson because he needs that asset and those monies just as badly as she does. And the only way he could get any equity was to sell Johnson County. And that's all he was asking was to sell Johnson County. Counsel, I don't understand your argument that the court has no equitable power. The court is supposed to make an equitable division of the property, isn't it? How do you justify those two propositions? The way to justify that proposition, Your Honor, is that, yes, the court is supposed to make an equitable division of the property, and that is the power that the court is clothed with pursuant to 503D. The court has to make a balancing pursuant to the various requirements under 503D. However, in this particular situation, again, when looking at the Weaver case, the specific rule in the Weaver case, and that was a case where there were two parties and, unfortunately, Mrs. Weaver was left out and had absolutely no rights in a company wherein she thought she had rights to a company that was thought to be a marital company throughout the entire marriage. When it came down to it at the end, she didn't have any rights. And in that particular case, what the court attempted to do was force the husband to give Mrs. Weaver a disproportionate portion of the marital estate in order to pay her back for being cheated out of this marital company and act in equity to pay her back for having been cheated out of the company she thought was hers. That is acting in equity in a different way. It's a different type of equitable power, making it fair. That's the type of equity I'm talking about, Your Honor. In this situation, in Adamson v. Adamson, that's my client's contention. What he is arguing in this particular situation is that the trial court in this situation was basically trying to make it fair that Mrs. Adamson thought she was cheated during the period of temporary relief during this entire proceeding, that she felt that she had been cheated. She had been divorced under grounds of adultery. It had been a very contentious divorce. She had what she believed to be an unfair period of temporary relief and a temporary, for lack of a better word, a temporary relief order and was told how she had to live and she had to share the marital residence. Neither party was ordered to leave the marital residence and she didn't like the way things were going and in order to make it fair, the trial court said we'll take something from Mr. Adamson during the period of post-decree and we're going to make it fair by taking away something he loves. The only thing Mr. Adamson had and that he loved was his recreation and the only thing that he ever took care of was this property. And he was the only caregiver for this property. And it really does throw in the face of common sense to have the only person who knows and takes care of this property and can get this property ready for sale to not have him down there taking care of it and getting ready for sale because nobody has a crystal ball but nobody can say when it's going to sale. It could sell in April or it could sell in October, November, December. And if he's not the one down there taking care of it... Mr. Adamson testified that there was absolutely no risk to that. No, I'm not asking what he testified to. I'm asking if there was a risk. There was no risk to that. Mr. Adamson wanted to get rid of this property as soon as possible. You've just answered my question by the answer that I said doesn't work. The fact that he testified he's going to do something doesn't mean he's going to. You've told us what a difficult divorce this was, how these parties were so hateful towards each other. How can a judge be wrong when the judge divides everything and calls the shots? Judges can sometimes be wrong, Your Honor, and unfortunately it's not because... It's hard to be wrong in a divorce case where the question is an abuse of discretion. Divorce cases are difficult for judges. But the time comes you have to cut everything up. How can we say the judge was wrong here? That is a very fair question. And it is hard to say the judge was wrong here, especially with an abuse of discretion. Because with an abuse of discretion, again, it's an ethical battle. And we're asking you to say that the judge absolutely missed the mark in this particular situation, which again is asking you to say that this particular judge did not see what was happening between these two parties. However, in each of the cases that were cited, the courts did find that there was an abuse of discretion. Again, in particular, the cases that were cited by my client in this particular situation, again, with regard to withholding the equity or making him wait for his equity. Most of the time when there's a withholding of equity on a piece of property, it's when the marital residence, not a recreational residence, but a marital residence, the equity is being withheld because you have a minor child or you have a custodial parent. That's not the situation here. This is a recreational piece of property. My client is being asked to wait for his equity until a recreational piece of property sells.  Does the former spouse have any ability to pay, what is it, $35,000 or $37,000, whatever the number is, short of mortgaging the marital residence or former marital residence? She has a W-2 job. She also has a part-time job, and that is reflected in the record, Your Honor. And even if she would have to mortgage the marital residence, it would only be for $35,000. And she does have good employment, Your Honor. So short of that, she would not be in as bad of a financial position as my client. Before you run out of time, I'm unclear. What personal property is your client requesting this court to overturn the trial court decision? My client made a very specific list of personal property, Your Honor, and that was set forth in his second point. For purposes of this appeal, what are the items at issue? Those items at issue, Your Honor, let me pull those up. Those items at issue were some houseplants that he had received from his family, a grandfather clock, and all of the property in his bedroom, which were a bed, some dressers, and his end tables that were in his bed. Do you have a value on those properties? No, actually, the trial court made absolutely no valuation on the personal property in the marital residence. Okay, counsel, we'll have rebuttal. Thank you. Thank you. Ms. McGrath. Thank you, Your Honors. May it please the court and counsel, I do agree with counsel, Your Honors, that this was a highly contentious divorce, as many of them are. When my client expressed to me her dissatisfaction in some of the court's rulings, I explained to her what the high standard of review was in the appellate court. I indicated to her this was not a venue to come to to get another bite of the apple. The parties here, the appellant here, is here on a third bite of the apple. The trial court considered his motion to reconsider, made one minor change on the property distribution, and upheld his earlier ruling. On an abuse of discretion standard, Your Honors, I stand on what we have stated in our brief, and I ask the court to affirm the trial court's ruling in its entirety, based even on the record which was not complete, filed in the appellate court here, and I am available for any questions. Do you think it would have been more, for lack of a better term, I guess, logical for the court to, if it was going to divide access to the Johnson property, to have given David the months of October to April, instead of April to October? Your Honor, I believe the trial court's ruling was brilliant, and the effect of it, or the purpose of it, was So it was not only logical, it was brilliant? Well, Your Honor, again, the counsel has conceded, we have two parties, this was a highly contentious divorce. Mr. Adamson had done nothing to get that property valued, despite the pendency of the proceedings for a long period of time. The property needed to be sold as soon as possible. Granting him use of that property during the time he wanted to, would have discouraged him from doing everything he could to sell the property. And the court, under the Marriage and Dissolution Act, has the authority to distribute the property, and order the sale of property, and do what is just. And yes, I think the trial court's ruling affected these parties and their incentive to get that property sold, which it had to be sold as quickly as possible. Is it correct that under Marriage of Weaver, a divorce court has no equitable powers? Your Honor, with all due respect to counsel, I do not believe that's correct. I think the trial court did what trial courts do all the time with marital property. And he did it appropriately, and it was within his authority. I think Marriage of Weaver was sort of an unusual case, where the wife had been working for the husband's parents' business. And the business was not actually owned by her spouse, yes. So that was certainly distinct, Your Honor. Again, Your Honors, I do ask that the judgment of the trial court be affirmed in its entirety. Thank you. Thank you. Rebuttal, please. Thank you. Your Honors, this is not just a case of my client asking for another bite of the apple. With regard to whether or not my client took the time to get a list or try to get the property listed, I do ask the court to refer to my client's brief. There was a very detailed list of the proceedings in this case. As you can see from the list of the proceedings, much of the time in this case was very front-loaded and spent on grounds of dissolution of marriage. Very little of the time on this case was spent working on any type of discovery or any type of temporary relief. These two parties at the very end of this case went from temporary relief to final disposition in rapid succession. Therein lies part of where we believe the abuse of discretion took place. You know, let me just ask you one thing here that sort of struck me when I began to read the briefs in this case. Terry filed a petition for divorce, and then David filed a counterpetition for divorce. Why does anybody do anything like that? If I were the attorney at that time in the case, Your Honor, I would be able to answer that a little bit more readily. However, after interviewing my client on that, he was counseled by his attorney to do that at that time. I believe when you look at the grounds for dissolution that my client filed, that's what started much of this animosity. The grounds for dissolution that my client filed under were adultery. That's what 90% of this case was spent was trying to prove adultery, which ultimately the grounds of dissolution were proven on. That's where a lot of the animosity... One of the advantages of no-fault divorce is that you don't get into all that stuff. And it's really unfortunate that this case ended up that way. Yes, Your Honor. And that is where, again, when you look at the way this case came down, much of this case, and this is a long case, unfortunately, when there are no children, even though it's a 27-year marriage, much of this case was front-loaded worrying about how to divorce these two individuals on grounds of adultery rather than worrying about how to distribute a 27-year marriage. And therein, according to... That's why, in our brief, we set forth how we got where we were. Because, again, our argument for why my client feels that the court was trying to act under the Weaver case in equity and be an equitable court, that's why my client feels the court was trying to act in equity. Not because the court's an unfair court. Not because he is not an intelligent judge or does not know what he's doing or he totally missed the mark. But because so much of the case was spent worrying about something else and distracted in chasing red herrings, and then we end-loaded this case going from a few discovery motions that never met fruition and then temporary relief, change of attorney, in September... Why shouldn't we assume that your client is still carrying out this grudge? Why shouldn't we assume that's why he's complaining about not getting the right months on the property? And why he's complaining he wants the four plants back and this and that little trivial item. Isn't he carrying out his grudge right now? Your Honor, that argument can actually go both directions. When looking at the trial transcript, I specifically asked my client, and it's very well documented, I asked him two times, and I said to him, this is your last chance, Mr. Adamson, what do you have out of the house? What do you want out of marital residence? He gave a very short list. He didn't want anything out of that marital residence, but a very short list of property, and he was leaving everything else for his wife. That's why he's not carrying a grudge. He only wanted the handmade furniture down south in Johnson County, and a very short list of property out of the marital residence. Four plants from Florida? That were given to him by his parents, which is in the testimony, and that was not even granted to him. That's why we believe the court was trying to use equitable powers to try to make this fair. If they were a gift, why wouldn't it be non-marital? We're not saying it wasn't marital. We're just asking that he get something that meant something to him. Okay, thanks to both of you. The case is submitted, and the court stands at recess.